Case number 14-5125 Anna Jacques Hospital et al. Appellants v. Sylvia Mathews Burwell. Mr. Barber for the appellants, Ms. Allen for the appellate. Good morning, your honors. My name is Keith Barber. May it please the court, I represent the appellants in this case. The secretary in this case seeks to isolate words to torture ambiguity into them. But when the words are placed in the context of the sentence with which they appear, there really is no ambiguity. The secretary must establish wage indexes reflecting the relative hospital wage level in the geographic area of the hospital. I just want to clarify a couple of things so I understand your claim exactly, and that is you don't challenge the secretary's process of collecting information in that it takes three years, I guess it's taken roughly three years because the hospital would have to get all their information together, which is a lot of information, and then it goes to intermediaries and has to get audited, and then it eventually lands, and then the secretary does whatever the secretary does. You're not challenging that process? That is correct, your honor. Mechanically that process? We do not challenge the process that was used to collect the wage data. Okay. We challenge where that data was used. Okay. And so you don't challenge the reporting process either, the hospital's use? No, we do not, your honor. And you don't The data from our perspective, at least for purposes of this case, can be accepted as And your position wouldn't be that geography is a clear and unambiguous term, because I take it you don't challenge that for some period of years it was the metropolitan, what is it, statistical areas, and then it's now core-based statistical areas, and the secretary could do, make that, so how to understand the, to draw the lines for collecting this information for hospitals with the discretion. The secretary has wide discretion in defining what constitutes the geographic area. But the secretary exercised that discretion in this case. And the information that the secretary used for the years in question here, the 2006 and 2007, would have been collected in 2002 and 3? Approximately four years earlier than that. But they would have reflected the actual wage costs about four years earlier than that. And at the end of those cost reporting years, the hospital would have prepared their cost reports and submitted them to the fiscal intermediary or Medicare administrative contract. Yeah, and at the time, so at the time the information at issue here was produced, and it was at a time when the hospitals were still working under the metropolitan statistical areas, correct? That's true. The hospitals would have been in the same geographic area at the time that those costs were incurred. So the information, and you don't, and at that time, then, all three of South Coast facilities were within the same metropolitan statistical area as your clients. And would have been in the Boston, Quincy metropolitan statistical area. Right. And so that information, so you don't challenge that information and you don't challenge that at the time it was submitted to the secretary, audited and used by the secretary, that it was consistent with the statute and that it came from the geographic area as defined at the time it was produced. That's true. So then the point is that at, once the core based statistical areas came along, the secretary did a renaming of other terms, and it was a decision by the Census Bureau in essence that said that due to the commuting patterns, if you will, of the various communities involved, that the South Coast hospitals or the Bristol County where these two South Coast facilities were, really were no longer, you know, part of the wage, you know, the wage cost area associated with Boston, Quincy. That year, but at the time the information was reported and given to the secretary. The information on which she calculated for 2006 and 2007 was from a unified geographical area. Yes. I mean, that's right, correct? And I think, yes, that's true. And geographically, as a matter of fact, these hospitals are not far apart, right? I mean, I got, isn't, isn't, isn't... But they are, I mean, they are in separate geographic areas as defined by the secretary. And the fact of the matter is, is the reasons that you're suggesting, or at least I think that you're suggesting, aren't the ones that the secretary has given for lumping the South Coast hospitals in wage data into the Boston-Quincy wage and tax determination. To be clear, what I'm trying to figure out here is that the secretary, you don't dispute that the secretary in setting the wage rates for 2006 and 2007 was perfectly entitled to rely on information from 2002, 2003. That's, that's correct. And that information... That's part of the process, Cheryl. Right, and that information was provided at a time they were all in the same geographical area. If, if, but if the, the small sliver of the South Coast system that happened to be, you know, the 10% of it that happened to be in the Boston-Quincy area had been across the river or down the street, so to speak, and in, in Bristol County, then all of that wage data would have been counted in the new Providence-New Bedford wage index area. And, and only because basically the hospital headquarters... Going forward, but not those years. I mean, you've said... Yes, they would have for those, for the years 2006 and 2007, if, if that small portion... Oh, no, but you want to individualize carve out, but I mean, I, my, my understanding is that you said across the country that the 2006 and 2007 years would have relied on 2002 and 2003 data, and nobody else had to go back and change that. But your position is, I think, please tell me if I'm wrong, that, that when they looked and said, oops, look what happened with, now that we've changed this prospectively, we need an immediate change using information that doesn't go through this three-year process. That's what, how would they have adjusted for you without having some sort of immediate gathering of information, of wage information? Well, they could have done a lot of things. They could have done what they did in 2008, which was simply to prorate every, you know, the weight of the data based upon the number of discharges from the various facilities. That's what they still do, right? That's what they still do. And in fact, what they could have done, since 90% of the system was in the Providence-New Bedford CBSA, they could have counted all of the wage data in, for that geographic area. That would have made a whole lot more sense. I guess I'm just having trouble seeing, though, where you, you started out with a textual argument, and given that she relied on information that was provided at a time when they were in the same geographic area, and she's entitled to rely on three-year-old and four-year-old information and do it, that she don't have to sort of stop in 2007 and use 2006 data, then I don't understand what your textual argument is. Because she's calculating the wage costs for 2006 and 2007, and she's doing it based upon, and this is what she's supposed to be doing for the whole country, for the geographic areas that the Secretary defined, and she didn't do that. They need to be in the same geographic area at the time of payment, not at the time the information establishing the wage rate is calculated? Well, it's at the time they make the determination of the wage index, and the Secretary basically said- But they have to make that determination based on the information they have. We've held that in the Methodist Hospital case, and so if the information you have has an error in it because of something that happened in the past, we don't make them recalculate. We let them use the information they have. The Secretary basically said, for 2006, for the determination of the 2006 wage index, we're going to redraw the geographic lines and do it this way. And then she didn't do it, at least not for Boston Quincy. She did not, having drawn it, the Secretary said, we're going to do it for that year, for 2006, and then obviously subsequently in 2007. This is how we're going to define what constitutes a geographic area. Doesn't matter when we collected the data, and the fact that we don't, and the Secretary didn't, you know, grandfather in any other way like that, the Secretary said, we're going to draw our geographic areas this way, and we're going to, and then didn't do it. My understanding is that the reason we ended up, the Secretary ended up using the Tobey Hospital information is that under the practice at the time, South Coast was allowed to decide which provider number to use. Is that right? It was based, Your Honor, simply on the address, the mailing address, effectively, of the system. I thought the records said South Coast picked the provider number under which, is that right? I believe that that's what the Secretary claimed. Right, okay. I mean, and to some degree... Is that wrong? Well, South Coast isn't here, so we don't really... I think to some degree that the hospital can obviously decide where its headquarters is, so the system can define, decide where its headquarters is and where its mail comes to. But beyond that, you know, that doesn't alter the fact that the wage costs, only 10% of them occurred in Tobey. Only 10% of them occurred in the Boston Quincy. What is your argument with respect to the discretion of the Secretary to declare that a hospital group can be treated as one institution? You're not saying that that's a Chevron 1 problem? If that results, as it did in this case, Your Honor, in the wage determination, in the wage index determination no longer reflecting the wage costs of hospitals in that geographic area, then it's in plain and unambiguous violation of the statute which mandates that the wage costs reflect the wage costs from the hospitals in that geographic area. Well, you started out your argument by saying, and your brief was critical of the Secretary by saying that they're trying to create ambiguity, you know, in commonly understood terms like hospital. But the fact of the matter is, I didn't see any clear definition of hospital that would define hospital the way that you say it should be defined. I mean, what am I missing? You know, I don't think you're missing anything, Your Honor. So isn't the term ambiguous? But other than the fact that only 10%, if you want to view the three campuses of the state, then, and if you want to say that based upon that, that all of the wage data for it has to be counted in one place, in one geographic area, then would it be, would it fit any sense of rationality to make that one place where only 10% of that one hospital is, as opposed to where the vast bulk of it is, over 90% of it, is in a different geographic area? We can't, you know, we're not going to have perfection in these matters, you know. Your Honor, it would have required... Close enough for government work. Close enough for government work costs the hospitals involved in this case about $30 million, Your Honor. Every inpatient treated in every hospital in the Boston-Quincy area resulted in under-reimbursement for that hospital for those services. That gets me to a question of what would happen if we were to rule for you and we were to reverse, if this were to go back. You represent about 40-some hospitals. Yes, Your Honor. But wouldn't there have to be recalculations and reimbursements or collecting more from the geographic area, the Providence, whatever geographic area that you say that most of the South Coast hospitals are? Shouldn't, wouldn't we have to, wouldn't the Secretary have to readjust downward their rates? There going to be a concomitant adjustment made? Normally the wage index determination is a budget-neutral determination. Had this been done properly, it would not have cost the government a dime. Yes, it means that in conformity with what the intent and the whole purpose of the statute is, the hospitals in the Boston-Quincy area would have been paid some more money. And that means that other hospitals would have been, you know, spread across the nation, would have been paid a little bit less. In terms of the remedy and how the government would pay and whether or not that would be budget-neutral, Your Honor, I honestly don't know. I don't know how the government would pay this and whether or not that they would offset it in some way to achieve budget neutrality. And I would suggest that that question is probably better directed to them. I just don't know how they would do it. In Methodist Hospital we had, it seems to me, a very similar scenario where there was, there it was a reporting mistake by a single hospital. Here it was a reporting decision by South Coast to use the Tobey Hospital provider number that was then alleged to have caused a miscalculation. And the argument was to the Secretary, you're violating the statute because of this error. And I don't think it was an admitted error. And the geography didn't work out right. The payments weren't tied properly to the geographic area because of this hospital, this misreporting in the data the Secretary had to work with. And we said, no, because we aren't going to insist that the Secretary go back and retroactively fix something as long as the Secretary reasonably relied on the information in hand at that time, the best the Secretary could at that time with the information she had, that we just can't. In part because, you know, it's one pie and whatever goes to someone gets taken out of someone else's mouth. There have been other cases where remedies have been provided for wage index errors. I just don't know what pot the government paid out of or how it did that. How would you distinguish our reasoning in the Methodist Hospital? But, you know, in Methodist Hospital, the government in court may have properly found that the government used the best available information that it had then  The government, in this case, had the information that it was using wage data from outside of the Boston Quincy area to determine what the Boston Quincy wage index would be. They knew that. We commented on it. It's in the record. That raises a question to me, sir, which is that the government's brief discusses that whole process, that rule-making process of setting the wage index and it points to statements that the Secretary made in response to comments and talking about reclassification and what can and can't happen in reclassification. In your opening brief, you said, well, all of that's irrelevant. And then in your reply brief, you didn't respond to anything that the government said with respect to kind of the Secretary's rationale that was spelled out there in the Federal Register. Why is that? Well, I believe we did respond. The reclassification arguments advanced by the Secretary are indeed just smoke. They are irrelevant. They have nothing at all to do with this issue. Why? Why don't they? Because nobody involved in this case requested or qualified for reclassification. It's simply... But wasn't that the Secretary saying, look, if there's a problem, the reclassification process can fix it. This kind of problem has, reclassification is a completely independent process for which this type of problem has no fix. And if the Secretary's argument is that you could use reclassification to fix this kind of issue, that is simply in error. Explain to me, I guess, you know, in the Medicare 101 level. If, for example, Your Honor, the South Coast system, I guess they would be the ones who would have sought reclassification in this case. For starters, they have no basis or no reason to do so. They're not really hurt by this. Okay? So, and where are they going to be asked to be reclassified to? You know, the... They don't, but somebody else might who, you know, weren't smart enough to pick their headquarters in the more expensive area. They picked their headquarters, they merged, and they picked their headquarters in the less expensive area. I'm keeping the facts specific to our concern here. But they weren't... And for our concern... But they weren't... She wasn't setting the wage index just based on the South Coast or any one hospital. It was... The decision had to be made on nationwide, how are we going to deal with this, right? However, my point is, is the notion that reclassification could have provided a remedy or solution to this problem for the hospitals in the Boston-Quincy area, that's simply not true. And the Secretary... If that's what the Secretary is suggesting in their briefs, that's not accurate. And the reclassification is just... The sole reason that the Secretary gave, at least in 2006 and 2007 for following this, was my interpretive manual provisions, the Provider Reimbursement Manual and the State Operations Manual, says that we treat, you know, multi-campus facilities as one hospital when they have a single provider. That was it. That was the extent of the Secretary's careful consideration of this. In 2008, the Secretary finally carefully considered this problem and came to an appropriate solution. I just wish he'd done it earlier. I don't think that's exactly fair. I mean, they did come to a solution in 2008, but as I read the record, they threw out ideas for trying... They didn't realize there was going to be this issue when they shifted to the CBSAs. And it's only four or five of these campuses that exist across the country amongst the... You tell me hundreds of thousands or millions of hospitals that are out there? There's about 3,500 to 4,000 hospitals. Okay. All right. So this was, you know, a little blip that they just hadn't realized was going to happen. And then they threw out an idea, got comments, and said, no, that's not going to work. Much like Methodist Hospital, we just can't get the information in a reliable way. We don't think we can get the information in a reliable way. We've got to keep thinking about this. And we are thinking about it. We're aware of it. We're going to do the best we can as fast as we can. And by 2008, they had a solution for you. Why isn't that the type of thing that would ordinarily fall within an agency's discretion? Because the statute says that you can't use wage data from something outside of the geographic area to calculate that geographic area's wage cost. But it was the wage data that they relied on was in the geographical area at the time they provided it to the secretary. That's what I have trouble with. But that's not relevant. Why? The secretary himself redefined the geographic area. I know what you said. It's probably consistent with the statute. As I've suggested, if the small sliver of the South Coast system that was in the Boston-Quincy area had simply been within Bristol County with those other two, there is no question here that that wage data would have been used to calculate the Providence and New Bedford wage index and not the Boston-Quincy wage index, even though it was collected when they were all in the same wage index area. Am I right that they merged in the mid-90s? And so between, I guess for about seven or eight years, these three hospitals were all part of your geographic area and were under the MSA system? Right. And were influenced. And so, I mean, nothing changed geographically on the ground in the real life. It was really just different circles being drawn. Well, nothing ever changes geographically on the ground. Lines get drawn by people. But they were driving your wage determinations for seven or eight years? What did change, at least according to the Census Bureau, was commuting patterns, which meant that the cluster of wage costs for those facilities were now more associated, similar to, if you will, with the wage costs of Providence and New Bedford rather than Boston-Quincy. And in fact, if you look at the numbers, Your Honor, of the wage costs, you can see that. If you look at the different wage index calculations for the hospitals, you can see that, you know, the average hourly wage in 2007, for example, for Boston-Quincy was $34.89. For the Providence-New Bedford and CVSA, it was $31.86. I know. I get that. It just strikes me that this is not sort of scientifically geographic, right? One of your clients is the Memorial Hospital of Rhode Island, which I would think would be closer to those wage rates than the Boston rates. But it's in your group. And that was due to reclassification for which they qualified for. But the point here is that the wage costs of the South Coast system are more similar to the wage costs of Providence and New Bedford and not the Boston-Quincy area. And because Providence-New Bedford has less expensive wages, that's why it deflated the Boston-Quincy wage index. Why don't we hear from the government? Thank you. We'll give you time on rebuttal. Thank you, Your Honor. May it please the Court. The statute at issue here gives the Secretary broad discretion to establish a factor for adjusting wages and wage-related costs by geographic area. And just to give the Court some context about, you know, what was going on when this issue arose, the agency was in the midst of implementing a major transition from the old MSA definitions to the new CBSA definitions. And in context, the agency's incremental response as it gathered more information through implementing the new CBSAs was perfectly reasonable. And just to pick up on the question... Why? I mean, you're... I'm not buying that. You draw a circle of a geographic area, you know that's the circle, and you say we're going to count hospitals outside the circle. That just strikes me as a simple case of the government not doing what the statute requires. Well, I think, I mean, under... Why am I wrong? I mean, we're making this case complicated, it seems to me, when I got the statute. You draw a little circle. It's pretty elementary.  Draw a circle. Who's in the circle? Who's outside the circle? Hospitals that the government was counting are outside the circle. Well, Your Honor, the Southwest Hospital Group is one hospital for Medicare purposes. It is... Right. They submit one cost report. But now... And the Secretary then figured out, okay, that's a problem, or we're going to change how we do that. We're going to prorate it so that we do the best we can, to your point about the word reflect, which you argued in the brief. I think they're doing the best they can. But they're not just saying now, as they did for 06-07. Forget it. We're going to count the Providence Hospital as if it were in Boston. Well, Your Honor, first, just to give you an idea of the scope of the problem... What does it mean to be a campus? That's exactly where I was going. That sounds like a kind of modern term to describe common corporate ownership. So 42 CFR 413.65 defines a remote location of a hospital. And there are a number of requirements that a remote location has to satisfy in order to use the main location's provider number. And those include being financially integrated, being clinically integrated, being under the same ownership and management as the main provider, and being in close proximity to the main provider. They have to be in the same state or adjacent states. It just seems like that could screw up the whole wage index because you're counting a remote location of this hospital that might be in a really different wage area, and then it screws up the wage index for all the hospitals in some metropolitan area. That just strikes me as unreasonable, arbitrary and capricious, whatever you want to call it, in terms of government work, which is no doubt why the government changed. Well, Your Honor, the agency has always treated multi-campus hospitals as one provider. They've always submitted a single cost report, and I think the regulations... So why did the government change? Well, they still submit one cost report. Why did the government change how... I know, that's a good point. So why did the government change how it applies to the statute, then, if they're still submitting one cost report? Sure. Well, in the fiscal year 2008 rule, the agency explained that it had received several inquiries about this particular issue, and so it considered three different alternatives as a way to approximately allocate the wage data across campuses, because still, the same reasoning it had given in the previous rules was still true, that there was no campus-specific wage data at that time, and so it could not perfectly allocate the wage data across campuses. So instead, it considered three alternatives to approximately allocate that data. It considered beds, it considered Medicare discharge data, and the agency proposed to use the number of full-time equivalent staff at each location as sort of the best way to approximate what the staffing needs were across the campuses. And so in the proposed rule, the agency explained that it didn't have in the Medicare database the information about the number of beds or Medicare discharge data, and that neither of those was a good way of estimating the staffing needs. Particularly with beds, because just the number of beds a hospital has doesn't necessarily indicate how full those beds are and what the staffing needs would be. And so in the final rule, the agency adopted the full-time equivalent staff measure, but then also temporarily allowed hospitals to use Medicare discharge data, but only until the cost report could be changed to collect campus-specific full-time equivalent staff data. Is it your position that the statute required you to make that recalculation, that alternative calculation in 2008, or that you could have kept going, as you did in 2006 and 2007, but you just, as part of your discretion, chose... Your discretion would have let you take either course, keep going, counting them as one hospital? Your Honor, we believe that the plain text of the statute gives the Secretary the discretion to choose what method to use. But of course, the agency is always trying to make the wage index and all of these calculations, which are incredibly complex, more precise and more accurate. And so the agency is constantly balancing accuracy with administrability. And when this seemed to be a larger problem and the agency had received several inquiries about it, the agency sensibly continued to refine its approach and consider these alternatives and adopted what was still an imperfect but reasonable solution. I think, you know, it's hard for me to wrap my head around all of this, but I thought that I understood from reading the record and materials that part of the issue is that cost... Wages are only one small part of costs. And so this cost data, it's lots of things. It's equipment and it's, you know... And trying to break that cost data apart is very difficult when you've got a hospital and labs, you know, lab work for one hospital might be done in another hospital and all of that kind of thing. And so it's not... I mean, the appellate tries to make it simple by just focusing on, well, you know, if you've got two hospitals in one place and one in another place, this is all very simple, but costs are not that easily divisible and that's why... That's part of the reason why each institution is treated as kind of... You know, it's treated as one institution for cost purposes, isn't it? That's absolutely correct, Judge Wilkins. These institutions, a multi-campus hospital or a remote location of a main provider, it's all one financially integrated institution. But it's not impossible or you wouldn't be doing it differently now. Well, it's... I'm not trying to suggest that it's impossible. What I'm explaining is... Okay, so as long as it's not impossible, it's doable. Well, it's... It's doable to do... To get at least a better approximation of Boston versus Providence because you're doing it now. We know it's doable even though the cost data is still submitted the same way it was back in the day. Yes, it's possible to do an approximation but my point is simply that there's still... The agency is still not requiring these integrated institutions to submit their cost data by campus. I know. And even... But you're still... But you're not then just saying, well, we're going to count them all in Boston then for the wage index. That's correct. Now they're allocating it based on... I mean, today it's based solely on the full-time equivalent staff at each hospital. But even when the agency proposed that solution, it got pushed back. The point I'm trying to make is I think there was a flavor in your briefs, which I understand why you're making this argument, but a flavor of, gee, this is really hard to disaggregate the data because it was a unified, unitary cost report for the different hospitals, facilities on the campus. And my point in response to that or my reaction when I read that was, well, they're still getting the same kind of data yet now they are able to at least make a better approximation of what should count in Boston and what should count in Providence, which shows that it's not impossible to do what the plaintiffs are asking for. That's true. And we think that it's reasonable for the secretary to have taken two years to figure this out. The fiscal year 2006 rule was the first time that the agency was aware that a multi-campus hospital was located in more than one CBSA. And so, you know, the agency sensibly dealt with the negative... But it's two years where... And there's real money involved. I mean, so this is not just some game. There's $30 million for the hospitals in Boston that they're out and therefore not providing, you know, I assume if you play this out, they're not providing the kind of care they otherwise could because they're $30 million out. And so it's not just a balance sheet issue. There's real people at the end of the day who are affected by the $30 million they were supposed to get that they didn't get because these Providence hospitals in a totally different wage index situation were not properly counted. Well, just to put it in context, I mean, the adoption of the MSAs... Sorry, the adoption of the core-based statistical areas in fiscal year 2005 was a major change that impacted not just, you know, the wage index calculation, but a number of calculations that the agency is making for Medicare reimbursements. And it significantly affected individual hospitals, their wage indexes, just within the wage index. And so in the 2006 rule, the agency first dealt with the negative impacts of that. And that's why it allowed this temporary reclassification for a campus, of a multi-campus hospital, sort of back to the area that it had previously been in. And that's what happened with South Pacific... Why is that not temporary? Go ahead. Why is that your friend on the other side says that that's irrelevant? Why is that relevant? Well, so what happened in the 2006 rule with respect to reclassification is that previously the agency hadn't explained what would happen if a particular campus wanted reclassification. And campuses don't have campus-specific wage data because the hospital submits only one cost report. And so what the agency did in the fiscal year 2006 rule was it temporarily allowed a campus of a multi-campus hospital to use the wage data from the entire hospital system to get reclassified into the area that other of the campuses were. So for example, here had the two Bristol County, the St. Luke's and Charlton, could have sought reclassification back into Boston Quincy based on the full data for the whole hospital system. And so that was a temporary fix that the agency... that the agency did in order to mitigate the negative impact that happened when hospitals like South Coast Hospital Group had previously been in one geographic area, but because of the new definitions were split between two geographic areas and so some of the campuses were being paid at a lower rate. Can I just try to understand, are you arguing that the problem here, or the issue here, is that the secretary had time to get itself in line with the statute and so it's appropriate for us to allow a couple years? Or is your argument actually that what the secretary did would still be permissible today? Well, we think that as a matter of the statute... Because I hear both arguments coming out and I'm just curious which you're voting. Just to explain, we think that the statute leaves the secretary discretion to do what it did in 2006 and 2007. So it could still do it today? It could still do that today. But in terms of the reasonableness of what the agency was doing, we think that the fact that it was in this period of transition and the agency was sensibly acting in an incremental fashion and addressing problems as they come up, that that adds to the reasonableness of what the agency was doing here. And it was addressing the negative impacts of the new definitions first. And it did that in the fiscal year 2005 rule where it had transition relief so that hospitals, for example, that had been urban hospitals but were now rural hospitals, could keep using their prior wage index. And so, you know, sort of the secretary's prioritizing of dealing with these negative impacts before reaching this isolated issue. But this is a money case. So if we were talking about injunctive relief of some kind, I get that and it takes, I'm well aware, it takes agencies time to kind of move the ship in a different direction when something changes. But we're talking here about a recalculation of money owed. So it doesn't really, the temporary fix thing doesn't really work in the same way because once you figure out, like, oh, we were counting hospitals outside the geographic area and therefore we owe them more money. Well, Your Honor, in Methodist Hospital, which this court affirmed, there was an error in the wage index calculation. And this court said that it was within the bounds of the statute and it was reasonable for the agency based on, you know, finality reasons and administrability reasons to only make the change prospectively. And we think that under this court's decision in Methodist Hospital, which recognizes that the statute does not instruct the secretary how to calculate the wage index and the statute allows for reasonable approximations that what the agency did here fits comfortably within that. So if I wanted to say that I disagree that the secretary could do this now, so if that's my position, you would still come back, I'm hearing, and say, well, even if you think the secretary couldn't do this now, you should at least allow the two years as some kind of temporary transition period to get itself together. Yes, Your Honor, because what the plaintiffs are asking for here is for this court to require the secretary to immediately address a very isolated problem that did not have an obvious solution. And there's simply nothing in the statute that required the secretary to fix this immediately.     which is to count Providence facilities as if there was an obvious solution in the statute? Yes, Your Honor. And I think that there is an obvious solution in the statute as if they're in Boston? I mean, that just, I mean, that's somewhat of a rhetorical question, I suppose, but it just seems to me that's still, okay, we have four solutions, how are we going to do this? Here's a good one, let's count the Providence facilities as if they're in Boston. That just strikes me as outside the realm of the, you know, you have five options, okay, let's throw that one out because that's not reasonable and that's the one that we have for 06 and 07. But from the agency's perspective, the cost reports that were submitted are for one hospital. And so, South Coast Hospital Group in the agency's view is one hospital and it's located in the Boston-Quincy area. Who decided that when they merged that the one hospital would be considered the one that was chosen? Who picked that? My understanding is that it's up to the hospitals  The surviving corporate entity decides that is my understanding. In what, if any, In the emergency in 1999, there were two hospitals in Boston that were operating in 1996. And so, they had been operating as a single hospital in the Boston area that was included with these other hospitals in the wage index for all of those years. So really, Is there a limit on the remote location mileage limit? So, there are a number of, there are sort of two requirements with respect to location. One is that they all have to be, everyone has to be within the same state or adjacent states. And then, there's a second location requirement that can be satisfied in a number of different ways, one of which is to be within 35 miles of each other. I think the other ones have to do with other sort of indications of integration. So, here, according to Google Maps, at least the hospitals are all within 30 miles of each other. And really, just to drive home, They don't have to be, I might have missed that, but as long as they're in the same state, so they're both in Texas. So, they have to be in the same state or different, sorry, the same or adjacent states. And then, they also have to satisfy another proximity requirement. And there are a number of different ways to satisfy the other requirement, one of which is to be within 35 miles of each other. That's sufficient, not necessary. To be within 35 miles. Yes, yes, exactly. I think the other one, some of the other ones have to do with their other indications of integration to show that the hospitals. My point being, you could have an urban area in Texas and not far away, a very rural area that has a very different wage index, not just somewhere to here. And you would, maybe we don't have that in the sense like this is almost a one-off case or close to a one-off case. But still, I'm trying to parse out the reasonableness, I guess, of this campus issue that Judge Wilkins raised. Hypothetically, that's possible. But again, they would have to satisfy all the requirements of financial integration, clinical integration, being under the same, you know, ownership and control. And also, just to put this in perspective, as of the fiscal year 2008 rule, there were only three hospitals, three multi-campus hospitals that were in two different areas. And even today, there are only six. So... Which way does that cut? I think it cuts in our favor. I thought you'd say that. I mean, there's another way to look at it is it's a pretty easily fixed problem without busting the budget. Well, it's not. I mean, it's not easily fixed because, you know, the most obvious solution would have been to just separate the wage data. And that was not possible because the wage data had already been submitted in fiscal years 2002 and 2003. I think it just underscores that this is an isolated problem that the agency... There was no need for the agency to immediately jump on this problem out of all of the problems that the agency was facing. I'm sorry. I guess my assumption, and maybe I was... You can tell me if I'm right or wrong, is when you start dealing with these statutes,  to look like this. You could just look at this one number and it will just implicate the wage index. Does this same reporting system in the agency and the information you're getting on this single report from South Coast covering the three facilities affect other things? I thought somehow these numbers affected dish payments, GRE allocations. And so, is that part of why you couldn't just sort of go in 2006, oops, break it up because it would have implications for other programs? It would have implications for other programs. The agency in the rule... Sorry, in the fiscal year 2006 rule talks about how even submitting a supplemental worksheet would have caused problems with respect to other calculations. And, I think more importantly, the secretary explained that treating a multi-campus hospital as one institution is consistent with how the agency treats hospitals for purposes like graduate medical education payments,  and other payments that are really made at the provider level. And so, we think that that further underscores the reasonableness of just continuing to treat multi-campus hospitals as a single institution. So when this flared on the scene in 2006, you had to not only try to see if there's some way to get the data, since we don't have the data, but also, well, if we do it for this, do we also have to do it for DISH and GRE and these other things, or would there be any tenable way to do it just for this and not do it for this thing over here? I guess my sense is the statute is a spider web of interconnected events. I didn't see you arguing that in the brief. I believe that we do quote in our brief the fact that the agency noted that this was consistent with how the agency was treating multi-campus hospitals for other purposes. Right. So, getting separate reports would be a problem, but the solution that you ultimately devised was not going back in a circle again, but was not impossible to do in those six rows. That's true. It could have been done, but again, you know, the agency... Without implications for other programs. Yes, the agency could have allocated the wage data solely for purposes of calculation of the wage index. Which is what it does now, right? Yes, based on full-time equivalent staff data. And even when the agency proposed that, it did get pushback from hospitals about how difficult it is for an integrated institution to even figure out how to separate its staff among its campuses because many, many people work at multiple campuses. And so again, I think that what ultimately happened in the 2008 rule, you know, emphasizes the fact that this was a very complicated problem. It didn't have an obvious solution. And you know, the agency had discretion to continue to refine its solution as it got more experience with these new geographic areas. Is there anything   during these two fiscal years in question kind of whether the three South Coast hospitals actually paid the wage that they were supposed to pay when they were paying the workers a disparate amount? So in other words, the one hospital that's in the Quincy, Boston area, what were the wages there compared to the wages of the other two? Was that data in the record?  that data is not in the record. I don't know whether, you know, the hospital would even collect it since it has, you know, one accounting structure for, you know, all three campuses. And even under the, you know, the ultimate kind of alternative that the agency adopted, you know, it's not perfectly allocating wage data among campuses. Instead, what it's doing is it's applying a percentage to the salaries and then adding them to a particular geographic area. So it's, you know, using, it's, it's just, it's still not, you know, doing what. I understand. I guess my question is, how do we, for all we know, I guess this is what I'm trying to figure out. For all we know, the South, the three South Coast hospitals pay all their nurses and doctors the same at the three campuses. That, for all we know, that could be. Do we know that they do or that they don't or what? That could be correct. That could be correct. We don't know. But in the 2008 rule, sorry, in the fiscal year 2006 rule, when the Secretary was explained, further explaining why it's appropriate to allow one campus of a multi-campus hospital to use the full hospital's wage data to seek reclassification, the Secretary explained that it would be reasonable to assume that the wages would be similar across campuses when you're talking about campuses that are in very close proximity and meet all of the other criteria for a multi-campus hospital. Why did the Secretary pick prorating it based on beds instead of prorating it by FTE? Or some other way of doing it? Just to clarify, the Secretary rejected prorating it based on beds. The Secretary adopted it as a long-term solution allocating based on full-time equivalent data. It also allowed as a temporary solution to allocate based on Medicare discharge data just until the cost report could be revised so that hospitals would report full-time equivalent staff data on a campus-by-campus basis. The reason that the Secretary gave in the 2008 rule was that the number of beds is just not a good measurement of the staffing needs of the different campuses because without knowing how full the beds are, it just doesn't tell you much about the actual staffing requirements. The agency explained that Medicare discharge data would be a better approximation of staffing needs but it would still fluctuate from year to year based on what the Medicare discharges happen to be. It also is not a great measurement. The full-time equivalent staff data is what the agency thought was the best approximation of the staffing needs of the various campuses. It now collects full-time equivalent staff data on a campus-by-campus basis in the cost report. The Secretary didn't even pick what she thought was the best especially since we're talking about Medicare reimbursement which is the Medicare discharge kind of prorating it based on that because of the administrative difficulties. So she, as a long-term solution, the Secretary chose full-time equivalent staff data and to allocate these and that is what the Secretary initially proposed as the best solution. But the Secretary also allowed Medicare discharge data to be used on a temporary basis. But in the fiscal year 2008 rule, the Secretary explained that the agency had received comments that all of these methods would present administrative burden for the hospitals and the fiscal intermediaries auditing this information. If we rule for the appellants, what if any administrative difficulties would present for the Secretary? If this court were to find a legal error, the appropriate remedy would be to vacate and send it back to the agency in order for the agency to determine the best solution. One of the things the agency could do would be to try to get the data from South Coast Hospital Group and under the current rule and try to figure out what the full-time staff data had been back in fiscal year 2002 and fiscal year 2003, but it would be up to the agency on remand to determine the appropriate course. Do you have a reason to dispute the number that's being thrown around of $30 million that issue? I do not. There's some confusion about whether it's based on the number of beds or the Medicare discharge data. I've seen different things in different filings, so I'm not sure because the agency ultimately rejected beds as a method of allocating. Okay. Thank you very much.  Judge Kavanaugh, I think you were correct. It really is pretty simple. I was just asking questions. While the Medicare tax are sometimes described as amongst the most impenetrable made by man, in this case, we drew a circle. The Secretary drew a circle. The Secretary could draw the circle for the purpose. I think what the Secretary just said is they drew the circle and they drew the circle.  the Secretary  to say that the  beds      not the number of beds in the Medicare discharge data. It's not the number of beds in the Medicare discharge data. It's  number of beds in the Medicare discharge data. The metaphor I was going to proceed with as kids, we drew circles and put marbles on the floor. For the sake of my discussion, let's make it 10 marbles. We will have 10 marbles inside the circle. Nine of them are outside. I think you seem to be at war with the secretary's position that this is one hospital. It has the system where it looks at geography, state, and population and looks at where you are. If we want to treat it as one hospital, then what is the most obvious solution to 90% of that hospital not being in the Boston Quincy MSA? Is the most obvious solution and the most reasonable allocation, even though just a bit of it is in the Boston Quincy MSA, to say all of it gets treated as in the Boston Quincy MSA, or is the more reasonable approach to say okay, if we absolutely must treat it as one unit, is it much more reasonable to say 90%  the hospital not being in the Boston Quincy MSA? Is the most reasonable allocation to say all of it gets treated as one unit, or is the most reasonable allocation to say 90%  hospital to say 90% hospital not being in  being in the Boston      allocation to say
judges: Kavanaugh, Millett, Wilkins